IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

2005 JAN 11 P 1: 02

U.S. DISTRICT COURT
NEW HAVEN, CT

DANVIL DAVIS, Reg. No. 14904-014          :
Federal Correctional Institution – Camp
Fort Dix, New Jersey                       :

      Defendant,          :          **305CV00086   J CH**

      v.                 :          **DOCKET NO.  3:02-cr-00275-JCH**

UNITED STATES OF AMERICA          :

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY PERSON IN FEDERAL CUSTODY

Danvil Davis, a person in federal custody under a judgment imposed by this Honorable Court, moves, by and through undersigned counsel and pursuant to 28 U.S.C. § 2255, the Rules Governing Section 2255 Cases in the United States District Courts (Dec. 2004) and Local Civil Rules of Procedure 3(b) and 8, to vacate the sentence imposed in the above-captioned matter for the limited purpose of considering discrete downward departure arguments available, but not raised, at sentencing. For the reasons set forth herein, the judgment in this case violated Mr. Davis's right to effective of assistance of counsel, in accordance with the Sixth Amendment to the United States Constitution, due to defense counsel's failure to submit for the Court's consideration legally permissible and factually supported grounds for downward departure, that is (a) manipulation of the scope of his offense conduct so as to substantially and unjustifiably increase the term of imprisonment to which he was ultimately subject under the Federal Sentencing Guidelines (a.k.a., "sentencing entrapment" or "sentencing manipulation") and (b) Mr. Davis's longstanding serious gambling problems. In support of this motion, Mr. Davis, by undersigned counsel, states as follows:

BACKGROUND

1. By virtue of a judgment of the United States District Court for the District of

Connecticut (Janet C. Hall, U.S.D.J.), docket number 3:02-cr-00275-JCH, the Movant, Danvil

Davis, is presently committed to the custody of the federal Bureau of Prisons. He is housed at

the Federal Correctional Institution-Camp in Fort Dix, Jersey, and his projected release from

federal custody is November 25, 2010 (accounting for anticipated Good Conduct Time).

2. Judge Hall sentenced Mr. Davis on December 8, 2003. The judgment of conviction

was entered on January 13, 2004 [Docket #29]. An amended judgment, which modified the

condition of the special assessment, was entered on January 26, 2004 [Docket #31].

3. Following reductions for the "safety valve" and acceptance of responsibility, the Court

sentenced Mr. Davis to 108 months' imprisonment followed by three years' supervised release,

with standard conditions, and a special assessment of $100 [Docket #31].

4. Through a guilty plea entered before Judge Hall, on September 19, 2003, Mr. Davis

stands convicted of the first count of a two-count Indictment, which was filed in the District of

Connecticut on October 2, 2002 [Docket #1]. Specifically, through his guilty plea, Mr. Davis

acknowledged that on or about September 24, 2002, in the District of Connecticut, he possessed,

with the intent to distribute, 50 grams or more of a mixture and substance containing a detectable

amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii). Dismissal of

Count Two of the Indictment, which sought forfeiture of property pursuant to 21 U.S.C. §

853(p), was entered on January 13, 2004.

5. Mr. Davis did not testify at any pretrial hearings. He did speak to the Court, however,

at his plea hearing, on September 19, 2003 [Docket # 33], as well as at sentencing, on December

8, 2003 [Docket # 34].

2

6. No appeal was taken from the judgment of conviction.

7. Mr. Davis has filed no other motions, petitions or applications concerning the judgment of conviction in this or any other court.

## GROUNDS FOR RELIEF

8. Mr. Davis asserts two grounds for relief, both of which concern the representation of Attorney Andrew B. Bowman of Westport (hereinafter: "trial counsel") with respect to the sentencing phase of his case. As partly reflected in the existing record and shall be developed more fully through any expansion, discovery or hearing that the Court may grant pursuant to Section 2255 Rules ("R.") 7 and 8, sustainable arguments for downward departure existed at the time of sentencing: one concerning the linked concepts of sentencing entrapment and sentencing manipulation as they pertain to law enforcement's role in shaping the extent and severity of Mr. Davis's offense conduct and the second involving gambling problems dating back to Mr. Davis's youth. Trial counsel failed to present either of these issues to the Court, thereby prejudicing Mr. Davis and denying him the right to effective representation.

Factual Background: Sentencing Entrapment/Sentencing Manipulation

9. At age 39, the instant offense, by all accounts, marks Mr. Davis only criminal involvement. The offense, and the underlying conduct, is largely the byproduct of inducement by confidential informants working for the government, as well as the control of investigators, who waited three months to arrest him. Over the course of the investigation, confidential informants changed the type of drug purchased from cocaine to cocaine base and ordered progressively greater quantities, despite investigators' awareness that Mr. Davis was not the immediate source or supplier. In this way, the government produced a nearly ten-fold increase in Mr. Davis's

3

penalty under the Federal Sentencing Guidelines, while also subjecting him to higher mandatory minimum sentences.

a. From April 2, 2000 until his arrest on October 15, 2002, Danvil Davis was employed as an automobile mechanic for the City of Hartford Public Works Department, earning $600 per week. Presentence Investigation Report ("PSI"), p. 11 ¶55. He had a steady work history dating back to at least 1988. Id. at p. 11-12.

b. In the Summer of 2002, a confidential informant ("CI") working for a joint effort of the federal Drug Enforcement Administration and the Hartford Police Department approached Mr. Davis at a teletrack location in Hartford, Connecticut and inquired as to whether he (Davis) knew anyone from whom the CI could purchase cocaine. December 8, 2003 Sentencing Transcript ("12/8 Tr.") at 14, 39 [Docket # 34]; September 19, 2003 Change of Plea Transcript at 32 [Docket #33]; PSI, p. 1 ¶5.

c. Prior to that summer, the government had no evidence or indication that Mr. Davis ever participated in the distribution or acquisition of drugs, or that he engaged in any drug activity not initiated by law enforcement, or agents working on its behalf. 12/8 Tr. at 41. In fact, agents involved in the instant case were unable to say on what information they relied in first suspecting Mr. Davis was "dealing drugs." Id. at 45.

d. Over the course of the next several months, from July through October 2002, Mr. Davis served as a go-between in four drug sales involving the government's confidential informants and individuals known to him in the community. 12/8 Tr. at 41-44; Stipulation of Offense Conduct ("Off. Cond. Stip."), as appended to September 19, 2003 Plea Agreement [Docket #15]. Mr. Davis was also found in possession of drugs at the time of his arrest. Id.

4

e. The government arranged to purchase drugs through Mr. Davis on multiple occasions before effecting an arrest. The first purchase arranged by a confidential informant, on July 22, 2002, was for 122.4 grams of pure cocaine hydrochloride. Off. Cond. Stip. The second and third purchases arranged by confidential informants were for cocaine base of weights relatively equal to the first purchase (124.0 grams of 53% pure cocaine base on July 31, 2002 and 123.4 grams of 46% pure cocaine base on August 14, 2002). Id. The fourth purchase arranged by a confidential informant, on September 24, 2002, was for 246.3 grams of 40% pure cocaine base, or double that of the second and third purchases. The quantity found on Mr. Davis at the time of his arrest, October 15, 2002, was roughly double that of the fourth purchase (a package weighing 500 grams (gross) containing a substance that field-tested positive for cocaine base). Id.

10. The Court observed that had Mr. Davis been arrested on July 22, 2002, his guideline range would have been 70 to 87 months' imprisonment. 12/8 Tr. at 15. Respectfully, had agents of the Drug Enforcement Administration and/or Hartford Police Department arrested Mr. Davis before October 15, and the prosecution otherwise followed the same course, his recommended guideline range would have been substantially less than the 108 to 135 months ultimately recommended and, in the first instance, lower than the Court's estimate. PSI, p. 12 ¶65.

a. Had agents arrested Mr. Davis on July 22, 2002, his recommended guideline range, with 122.4 grams of pure cocaine hydrochloride, would have been 12 to 18 months' imprisonment [Base Offense Level of 18 (§ 2D1.1(a)(3), less five levels for "safety valve" and acceptance of responsibility (§§ 2D1.1(b)(6), 3E1.1), results in a Total Offense Level of 13]. In that instance, the Court, at its discretion, could have sentenced Mr. Davis to time served — the

time spent in State custody from his arrest, on October 15, 2002, until release on bond following

his change of plea in federal court, on October 14, 2003 [Docket #s 18, 20].

b. Had agents arrested Mr. Davis on July 31, 2002, his recommended guideline range,

accounting for prior conduct, would have been 70 to 87 months' imprisonment [Base Offense

Level of 32 (§ 2D1.1(a)(3), less five levels for "safety valve" and acceptance of responsibility (§§

2D1.1(b)(6), 3E1.1), results in a Total Offense Level of 27] — a sentence at the bottom of this

range being three years and two months' less than that he is presently serving.

c. Had agents arrested Mr. Davis on either August 14 or September 24, 2002, his

recommended guideline range, accounting for prior conduct, would have been 87 to 108 months'

imprisonment [Base Offense Level of 34 (§ 2D1.1(a)(3), less five levels for "safety valve" and

acceptance of responsibility (§§ 2D1.1(b)(6), 3E1.1), results in a Total Offense Level of 29] — a

sentence at the bottom of this range being one year and nine months' less than that he is presently

serving.

11. Mr. Davis's trial counsel was familiar with the law of entrapment, as a defense to

criminal conduct. He did not pursue that defense in light of, inter alia, the risk to Mr. Davis

should he not prevail at trial. 12/8 Tr. at 48-49. Yet, whereas the United States Court of Appeals

for the Second Circuit has recognized that, in certain circumstances, a downward departure for

sentencing entrapment and/or manipulation is legally permissible, trial counsel did not to present

the issue of Mr. Davis's offense conduct within this context. Instead, trial counsel requested a

downward departure on the basis of "aberrant behavior", which was factually and legally

inapplicable in Mr. Davis's case under prevailing law and the express terms of the controlling

guideline (U.S.S.G. § 5K2.20). Compare 12/8 Tr. at 48-49 and Defendant's Sentencing

Memorandum at 8-10 [Docket #22] with 12/8 Tr. at 9-13, 16-17, 49-55.

Factual Background:  Gambling Problem

12. Danvil Davis began gambling at the race tracks while a youth in Jamaica.  By the time of his arrest, he had a troubled history of gambling that included cyclical losing into the thousands of dollars.

13. Approximately eight years before the government's confidential informant approached him at the Hartford teletrack concerning the instant offense, Mr. Davis attempted unsuccessfully to address his addiction through attendance thrice weekly at Gamblers' Anonymous.  See PSI, p. 9 ¶45.

14. Mr. Davis was experiencing regular gambling losses during the several months he engaged in the instant offense and needed additional money to help support his family and children.  See 12/8 Tr. at 39.

15. Through conversations with Mr. Davis and members of his family subsequent to assuming representation but well in advance of sentencing, trial counsel was aware of the nature and extent of Mr. Davis's gambling problem.  As an example, prior to sentencing, trial counsel had occasion to inspect the contents of Mr. Davis's wallet, which had been seized at the time of arrest.  Among other items contained therein, trial counsel found numerous betting slips.

16. Those close to Mr. Davis opined that his gambling may have contributed to his offense conduct.  See e.g., PSI, p. 9 ¶45.

17. Trial counsel never sought nor encouraged a clinical assessment of Mr. Davis's gambling, nor did he present the Court with information relevant thereto.

18. A defendant's gambling-associated difficulties are a recognized basis for downward departure, even if unrelated to the offense of conviction.

Bases for Relief

19. Paragraphs 8 through 18 are incorporated herein by reference.

20. Trial counsel did not sufficiently investigate the factual issues relevant to Mr. Davis's

sentencing, particularly all those that might support a downward departure from the stipulated

guideline range of 108-to-135 months' imprisonment.

21. Trial counsel did not sufficiently research the legal issues relevant to Mr. Davis's

sentencing, namely all viable bases for downward departure.

22. Trial counsel's acts and omissions fell below the standard of reasonable competence

in the criminal law.

23. But for trial counsel's errors and omissions, as described above, it is reasonably

probable that the results of the trial court proceedings, namely the sentencing hearing, would

have been different.

24. Mr. Davis's confinement is unlawful in that it is based upon a sentence rendered in

violation of Movant's constitutional right to the effective assistance of counsel, specifically under

the Sixth Amendment to the United States Constitution.

No Direct Appeal

25. Mr. Davis's claims of ineffective of assistance of counsel were not brought because of

his waiver of direct appeal, expect for certain limited circumstances not relevant here, and

because the issues are properly brought directly via a motion pursuant to 28 U.S.C. § 2255.

Post Conviction Efforts

26. As noted in Paragraph 7, supra, Mr. Davis has filed no other motions, petitions or

applications concerning the judgment of conviction in this or any other court.  Likewise, he has

not heretofore raised the issue(s) of trial counsel's ineffectiveness in any other legal forum.

## ADDITIONAL MATTERS

27. Mr. Davis was represented at his initial arraignment and detention hearing, on October 29, 2002, by appointed counsel, Attorney Frank J. Riccio of Bridgeport, Connecticut (923 East Main Street, Post Office Box 491, Bridgeport 06601).

28. Attorney Andrew B. Bowman of Westport, Connecticut (1804 Post Road East, Westport 06880) filed an appearance on Mr. Davis's behalf in lieu of Attorney Riccio, on December 20, 2002. Attorney Bowman represented Mr. Davis at his change of plea hearing, at a motion hearing concerning release from custody pending sentencing, and at sentencing.

29. Mr. Davis has no other sentences to serve after completion of the sentence underlying this challenged judgment, which is scheduled to expire in November 2010.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Todd Bussert verifies under penalty of perjury under the laws of the United States of America, and as a person acting on the Movant's behalf, to wit, as Mr. Davis's post conviction counsel, that all of the factual averments of this Petition are true and correct, either based upon Mr. Bussert's personal knowledge or upon his personal examination of the pertinent files and records, and other reasonable investigation, as witnessed by his signature below.

WHEREFORE, Danvil Davis prays that this Honorable Court grant the following relief:

1. After full consideration on the merits, including such expansion of the record, discovery and/or hearing as the Court may deem appropriate, issue an order setting aside the judgment of conviction and schedule a new sentencing hearing for the limited purpose of determining whether a downward departure should be granted on

the basis of sentencing entrapment/sentencing manipulation and/or of his

longstanding gambling problems.

2. Grant such other or further relief pursuant to 28 U.S.C. § 2255 as law and justice

require.

Dated January 11, 2005                    Respectfully submitted,
                                          THE PETITIONER

                            By:    TODD BUSSERT, CT24328
                                   103 Whitney Avenue, Suite 4
                                   New Haven, CT 06510-1229
                                   (203) 495-9790; Fax: (203) 495-9795
                                   tbussert@bussertlaw.com


                                   Attorney for Movant