UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANVIL DAVIS | : | |
| V. | : | Crim. No. 3:02CR275(JCH) |
| | | Civil No. 3:05CV86(JCH) |
| UNITED STATES OF AMERICA | : | June 20, 2005 |

**GOVERNMENT'S RESPONSE TO DEFENDANT DANVIL DAVIS'
MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE,
OR CORRECT SENTENCE BY PERSON IN FEDERAL CUSTODY**

The Government hereby opposes defendant Danvil Davis' Motion to Vacate, Set Aside,

or Correct Sentence and requests the Court deny the motion.

## I. Background

Indictment

On October 2, 2002, a grand jury sitting in Hartford, Connecticut returned a two-count

indictment against defendant Danvil Davis. In Count One, the defendant was charged with

possessing with the intent to distribute and distributing 50 grams or more of a mixture and

substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Count Two of the indictment charged

forfeiture allegations, including defendant's automobile, in accordance with 21 U.S.C. § 853(a).

Guilty Plea

On September 19, 2003, the defendant pleaded guilty--pursuant to a written plea

agreement--to Count One. Contained within that written plea agreement (Doc. 15) was a

stipulation between the Government and the defendant as to a sentencing guideline calculation and a separate stipulation as to the offense conduct. The defendant signed both the plea agreement letter and the offense conduct stipulation. Transcript 9/19/03, p. 16-17. [1] The Plea agreement letter also contained a waiver of right to appeal or collaterally attack the sentence to be imposed in this case.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant in entering his plea of guilty in this case expressly waived his right to collaterally attack his conviction and sentence. The plea agreement signed by the defendant, provided that:

> It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 135 months, even if the Court reaches a sentencing range permitting such a sentence by a Guideline analysis different from that specified above. The defendant expressly acknowledges that he is waiving his appellate rights knowingly and intelligently.

Doc 15, p. 4.

During the course of the change of plea proceeding, the plea agreement and its provisions were discussed and addressed by the Court. First, when the written plea agreement was handed up to the Court, the following exchange between the Court and the defendant took place.

Court:       I've just had handed up to me, a letter dated September 19th, addressed to Attorney Bowman and signed on page 7 by Attorney Runowicz and by Attorney Bowman.

---

[1] This references the transcript of the change of plea proceeding which occurred on September 9, 2003, hereinafter referred to as "Tr. 9/19/03."

| | | |
|---|---|---|
| | | That– Mr. Davis is that your signature there at the end of the letter, as well? |
| Defendant: | | Yes. Your Honor. |
| Court: | | All right, and then there's another page 8, which is called, "Stipulation of offense conduct," which again, is signed by both counsel. |
| | | Is that also your signature, Mr. Davis? |
| Defendant: | | Yes, your Honor. |
| Court: | | All right. |
| | | Now before you signed the – in both of those places, had you read this letter and stipulation carefully? |
| Defendant: | | Yes, your Honor. |
| Court: | | And had you had an opportunity to discuss it with Attorney Bowman? |
| Defendant: | | Yes, Your Honor. |
| Court: | | And was – He answered whatever questions you had about it? |
| Defendant: | | Yes, Your Honor. |
| Court: | | All right. |
| | | Do you feel you understood the letter and the stipulation? |
| Defendant: | | Yes, Your Honor. |
| Court: | | Is there anything about the letter that you now don't understand, or you want to discuss further with counsel or ask the Court about? |
| Defendant: | | No. No, Your Honor. |

Tr.  9/19/03, p.15-17.

After the court asked defendant's counsel to summarize the plea agreement, and then

requested a government counsel if anything needed to be added, the following colloquy took

3

place.

| | |
|---|---|
| Court: | All right.  I guess I should ask first, Attorney Runowicz, is there anything, in terms of the description of the plea agreement that Attorney Bowman's done, that you would disagree with, or anything you think ought to be added to, specifically on the record? |
| Mr. Runowicz: | Nothing, essentially, that I disagree with.  There's just two points I'd like to bring out to the Court.

The plea agreement does provide that the government intends to dismiss Count Two of this indictment at time of sentencing. |
| Court: | Yes. |
| Mr. Runowicz: | In exchange for that, Mr. Davis has agreed that he is not going to seek to be considered a prevailing party– |
| Court: | Right. |
| Mr. Runowicz; | – with respect to forfeiture proceedings and collection of legal fees and attorney fees, et cetera, with that. |
| Court: | Okay. |
| Mr. Runowicz: | And finally, one other thing I would just like to touch on, as well, is the Court made comment about parties and reserved their respective rights to appeal, and essentially, that is correct.  However, there is a caveat, to the extent that if the Court were to sentence the defendant within the range that both counsel and I have believed to be the correct sentencing range; that is, if the Court not exceed 135 months,-- |
| Court: | Yes. |
| Mr. Runowicz: | –that Mr. Davis agrees not to appeal the sentence or to seek collateral attack. |
| Mr. Bowman: | That's correct, Your Honor. |
| Court: | Oh, all right, that should be on the record.  Thank you.  I had missed that. |
| Mr. Bowman: | Right, and Mr. Davis is well aware of that. |

4

| | | |
|---|---|---|
| Court: | All right. | |
| | So, Mr, Davis, is there anything that Attorney Bowman or Attorney Runowicz has just said that – in describing the agreement, that's different from what you had understood? | |
| Defendant: | No, Your Honor. | |
| Court: | No? All right. Great. | |

Tr. 9/19/03, p. 23-24.

Finally, near the end of the change of plea proceeding, after the Government had described the evidence, but before the defendant was asked to enter his plea, the Court again addressed the defendant's understanding of his actions and the consequences if he were to plead guilty.

| | |
|---|---|
| Court: | Do you feel you understand the consequences of your plea? |
| Defendant: | Yes, Your Honor. |
| Court: | Is there anything you don't understand about what's happened here this afternoon, or about the plea in this case? |
| Defendant: | No, Your Honor. |
| Court: | Is there anything you want to ask me or ask Attorney Bowman before you make a final decision and enter your plea? |
| Defendant: | No, Your Honor. |

Tr. 9/19/03, p. 37-38.

Sentencing

On December 8, 2003, the defendant appeared before the Court for sentencing. After argument on defendant's motion for a downward departure based on extraordinary impact on defendant's family and on aberrant behavior, the Court denied the motion. The Court found the

5

applicable range under the Sentencing Guidelines to be 108-135 months.  This is the same

guideline range to which the defendant had stipulated in the plea agreement.  As provided in the

plea agreement, a benefit for which the defendant had bargained, the Government recommended

a sentence of 108 months, the very bottom of the low end of the guide range.[2]  The Court

sentenced the defendant to 108 months followed by three years of supervised release.  Because

this sentence of imprisonment was below 135 months, the Government submits that the

defendant has waived his right to now collaterally attack his sentence.

Defendant's Motion Pursuant to 28 U.S.C. §2255

Notwithstanding the above facts, on January 11, 2005, the defendant filed a Motion

Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal

Custody.  The defendant had filed no direct appeal to challenge his conviction or sentence.

In his § 2255 petition, the defendant seeks to have his sentence vacated and his case

resentenced.  He claims that his Sixth Amendment right to effective assistance of counsel was

violated by his counsel's failure to assert defendant's purported longstanding serious gambling

problem and failure to argue improper government sentencing guideline manipulations as bases

for downward departure.

Government's Opposition to Defendant's Motion

The Government files this memorandum in opposition to the defendant's petition.  First,

the Court should deny the defendant's petition because he waived his right to collaterally attack

his sentence.  That sentence was at the bottom of the range for which he had bargained and to

---

[2] In addition, as bargained for by the defendant, the Government dismissed Count Two of the indictment.

which he had stipulated and agreed.

Second, Mr. Davis veils his unhappiness with his sentence with an ineffective assistance of counsel claim. These claims should also fail because the defendant does not meet the first prong of the Strickland[3] test since the arguments he would have had defense counsel make would have been legally insufficient, and defense counsel's representation was far from ineffective. Rather, counsel effectively represented defendant Davis by negotiating on his behalf dismissal of Count Two of the indictment, Government agreement to recommend the implementation of the safety valve provisions of 18 U.S.C. § 3553(f), and most importantly to have the Government recommend to the Court at time of sentence that a sentence at the low end of the guideline range (108 months) would be appropriate. (Doc. 15, p.4).

For these reasons, which are discussed in greater detail below, the Court should deny the defendant's motion pursuant to §2255.

## II.  Discussion

### A.  The Defendant Waived His Right To Collaterally Challenge His Sentence, and Therefore, the Court Should Deny the Motion.

In the written plea agreement, the defendant agreed not to appeal or collaterally attack his sentence of imprisonment if it was below 135 months. The Court sentenced the defendant to 108 months of incarceration.  Thus, the waiver provision is enforceable and should be enforced.

In this circuit, a defendant's waiver of the right either to directly appeal or collaterally attack a sentence within an agreed-upon Sentencing Guideline range generally is enforceable. See, e.g., Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001)(upholding

_____

[3] Strickland v. Washington, 466 U.S. 668 (1984).

effectiveness of waiver of right to attack conviction pursuant to section 2255 petition); <u>United States v. Garcia</u>, 166 F.3d 519, 521 (2d Cir. 1999)(upholding effectiveness of waiver of right to appeal sentence). Although appellate waivers are not absolute in scope, the circumstances under which courts will decline to enforce a waiver are limited. <u>See</u> <u>United States v. Gomez-Perez</u>, 215 F.3d 315, 319 (2d Cir. 2000) ("These exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence.").

These exceptions include situations

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases, when the government breached a plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

<u>Id.</u> at 319 (collecting cases)(citations and quotation marks omitted).

A court also may decline to enforce a waiver of the right to file a section 2255 motion where a defendant claims he agreed to the waiver without effective assistance of counsel. <u>See, e.g.</u>, <u>Frederick v. Warden</u>, 308 F.3d 192, 194-95 (2d Cir. 2002); <u>United States v. Hernandez</u>, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam) (declining to enforce a waiver of appellate rights where defendant sought to challenge on appeal the constitutionality of the process by which the appeal rights were waived).

The defendant does not claim that the appellate waiver was not made knowingly, voluntarily, and competently. Rather, his motion and memorandum seems to suggest that there was not sufficient inquiry by the Court of the defendant personally as to what waiver of collateral attack meant. The defendant also does not claim that his sentence was imposed based on ethnic, racial, or other prohibited biases. Nor does the defendant claim that the Government breached

8

the plea agreement or that the Court failed to enunciate any rationale for the defendant's sentence, and thereby abdicated all its judicial responsibilities.

Although, the defendant makes ineffective assistance claims against trial counsel, these claims focus on post-plea activities and center on his assertion that his attorney did not pursue several areas of departures. The defendant does not assert that his appellate or collateral attack rights were waived as a result of ineffective assistance, i.e., through an unconstitutional process prior to his plea. In fact, he does not challenge the pre-plea process at all.

"For the waiver of appeal contained in [a] plea agreement to have its intended force, the waiver clause must bar ineffective assistance of counsel claims where such claims are based upon post-plea advice. *See, e.g., Djelevic* 161 F. 3d at 107 ("If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless.")." Catino v. United States, 2001 WL 536928, *2 (S.D.N.Y. May 21, 2001).

As discussed above, the plea agreement contained express language by which the defendant waived his right to appeal or collaterally attack the conviction. The defendant advised the Court that he had read the plea agreement, discussed it with his attorney, and understood its provisions. Tr. 9/19/03, p. 16-17. The Government also explained this issue in the defendant's presence in open court. Tr. 9/19/03, p.23-24. Further, the Court ensured that the defendant understood this waiver. Tr. 9/19/03, p.24. Additionally, trial counsel also explained this issue to defendant pre-plea.[4] There is no doubt that the defendant was fully aware of the decision he was

---

[4] See page 10, ¶ 26-27, of Affidavit of Counsel dated June 6, 2005 attached as Exhibit One and hereinafter referred to as "Aff. 6/6/05".

making.  Because the defendant does not meet the conditions under which a Court may decline to

enforce a waiver of the right to file a  §2255 Motion, this Court should enforce the waiver

provision and dismiss the defendant's petition.

The Second Circuit has enforced waivers for petitioners who have waived their right to

collaterally attack the sentence and then attempted to assert a § 2255 claim that ineffective

assistance of counsel led to the imposition of an improper sentence.  See, e.g., Garcia-Santos v.

United States, 273 F.3d 506, 509 (2d Cir. 2001)(upholding effectiveness of waiver of right to

attack conviction pursuant to section 2255 petition); United States v. Garcia, 166 F.3d 519, 521

(2d Cir. 1999)(upholding effectiveness of waiver of right to appeal sentence).   The Court has

commented that:

> [d]espite his effort to dress up his claim as a violation of the Sixth Amendment,
> defendant in reality is challenging the correctness of his sentence under the
> Sentencing Guidelines, and is therefore barred by the plain language of the waiver
> contained in his plea agreement with the government.

 Garcia, 166 F.3d at 522 (quoting United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998));

see also  United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997)(upholding waiver of appeal

provision even when the defendant claims that the sentence is illegal under the Sentencing

Guidelines); United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995) ("If this waiver does not

preclude a challenge to the sentence as unlawful, then the covenant not to appeal becomes

meaningless and would cease to have value as a bargaining chip in the hands of defendants.").

The same rationale should apply in this case.  Defendant Davis knowingly and willfully

pleaded guilty, admitted to the charge and to relevant conduct, stipulated to his role in the

offense, and waived his right to collaterally attack his sentence.  In spite of these facts, the

defendant is attempting just such a collateral attack.  If this waiver does not preclude him from

raising his ineffective assistance claims, then his covenant not to appeal or collaterally attack his sentence becomes meaningless and ceases to have value. He agreed to a sentence within a stipulated guideline range and was sentenced within that range. He got the benefit of his bargain. He should not be allowed to circumvent his own plea promises with post-plea claims of ineffective assistance. His claim should be barred without reaching the merits. See, Catino, 2001 WL 536928 at p. 2. The court should enforce the defendant's agreement to forego a collateral attack on his sentence and should summarily dismiss the petition.

**B.      Even if the Court were to find that the Defendant Did Not Waive His Right to Collaterally Attack his Conviction and Sentence, his Motion Should Still be Denied.**

Section 2255 provides that a federal prisoner may challenge the validity of his sentence on four grounds: (1) The sentence was imposed in violation of the Constitution or federal law, (2) the court lacked jurisdiction to impose the sentence,   (3) the sentence exceeded the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.  See Hill v. United States, 368 U.S. 424, 426-27 (1962).  It does not provide a remedy, however, of "all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). Section 225 is intended to redress only "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428.  In his motion, defendant Davis does not challenge the jurisdiction of the court or assert that this court exceeded the statutory maximum authorized by law.  Rather, he argues the sentence was imposed in violation of the constitution or federal law and that it is otherwise subject to collateral attack because he was denied effective assistance of counsel at his sentencing hearing in violation of the Sixth Amendment.   According to defendant Davis, his trial counsel's failure to argue for downward departure based on his gambling

11

problems and sentencing entrapment, constituted ineffective assistance.  (Def.'s Motion at 3.)

To prevail, defendant Davis must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" under "prevailing professional norms," Strickland  v. Washington, 466 U.S. 668, 688 (1984), and that his counsel's "deficient performance render [ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

In assessing the first prong, " a convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690.  The court  "then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.  In assessing counsel's conduct, the court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id.  at 689.  The Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement." Id. at 690.

Turning to the second prong, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding [since] [v]irtually every act or omission of counsel would meet that test." Id.  at 693.  Rather, a defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687; see Lockhart, 506 U.S. at 372 ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."); Kimmelman v. Morrison, 477 U.S. 365, 374

12

(1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").  Thus, a court examining an ineffective assistance claim must focus on whether the proceeding was fundamentally unfair or the result of the proceeding unreliable, not simply whether, but for counsel's deficient performance, the proceeding's outcome would have been different.  See Lockhart, 506 U.S. at 369 ("To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.").

A defendant's "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700; see also Kimmelmann, 477 U.S. at 381.  Where a defendant fails to demonstrate prejudice, as the Lockhart court has construed that term, the court need not inquire into the competency of counsel's conduct.  See Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Strouse v. Leonard, 928 F. 2d 548, 556 (2d Cir. 1991).

Defendant Davis fails to meet his burden of demonstrating that his trial counsel's alleged errors rendered the result of the sentencing hearing unreliable or the proceeding fundamentally unfair.  See Lockhart, 506 U.S. at 372.  Consequently, the court does not need inquire into the competency of his counsel's conduct. See Strouse, 928 F. 2d at 556.

**C.    Defendant's Claim that Trial Counsel's Representation was Ineffective when Counsel Failed to Argue Guideline Manipulation Must Fail.**

In his motion, defendant Davis asserts that his trial counsel's representation was unconstitutionally deficient because counsel did not attempt to argue that the defendant had been

13

subject to "sentencing entrapment" or "sentencing manipulation." He asserts that if the government had arrested him after his first sale of drugs, which would have prevented his making the three other sales of controlled substances and his attempt to sell cocaine base for a fourth time at the time of his arrest, his sentencing guideline exposure would have been much less. He suggests in his motion that he would have had a right to a downward departure if only it had been asserted by trial counsel.

The doctrine of "sentencing manipulation" has never been recognized by the Second Circuit. Catino v. United States, 2001 WL 536928, *5 (S.D.N.Y. May 21, 2001), and its status as a defense is unsettled. United States v. Caban, 173 F. 3d 89, 93 fn 1 ( 2d Cir. 1999); United States v. Barnes, 228 F. Supp. 2d 82, 88 (D. Conn. 2002) (J. Arterton). The Second Circuit, in United States v. Gomez, 103 F. 3d 249, 256 (2d Cir. 1997) declined to determine whether the doctrine of sentencing manipulation is viable, but noted that it would require a showing of outrageous government conduct which overcame the defendant's will. A defendant would have to convince the fact finder that government agents induced him or her to commit an offense that that person was not otherwise predisposed to commit. United States v. Knecht, 55 F. 3d 54, 57 (2d Cir. 1995).

Defendant's motion is devoid of any showing of outrageous government misconduct. He never suggests that the action of government agents forced him to commit a crime that he was not otherwise willing to do. As his trial counsel noted, the tape recordings made of the drug deals in which the defendant was recorded demonstrated the defendant's understanding of drug terminology, demonstrated that on each occasion in which he had distributed drugs to the government, the defendant had been fronted the drugs by owners who obviously trusted him with

14

large quantities of drugs.  Moreover, trial counsel realized that the informants making the

purchases had no leverage over the defendant such that they were in a position to exact "obedient

performance of his part." Aff 6/6/05, p.6.  Recognizing that the facts of this case would not favor

the defendant, trial counsel elected to pursue a three level downward adjustment for acceptance

of responsibility for fear that the danger of losing this benefit "was greater than any hope Mr.

Davis had of prevailing on a sentencing manipulation argument." Aff. 6/6/05, p. 7.  Here where

the defense does not clearly exist, trial's counsel decision not to pursue it in order to preserve a

definite three level reduction in the Guidelines calculation for acceptance of responsibility was a

choice of sound trial strategy.  Actions by counsel in the exercise of sound trial strategy do not

constitute ineffective assistance.  United States v. Berkovich, 168 F. 3d 64, 67 (2d Cir. 1999).

At best, defendant's argument is simply that he should have been arrested sooner.  This

argument has been considered and rejected as a basis for habeas relief.  See United States v.

Barnes, 228 F. Supp. 2d 82 (D. Conn. 2002), where United States District Judge Arterton denied

defendant's § 2255 motion despite his claim that the government should have arrested him after

his first three transactions.  See also, Catino v. United States, 2001 WL 536928 (S.D.N.Y. May

21, 2001).  The Second Circuit has stated, albeit in a non-habeas case, "[w]e have held that there

was no basis to find sentencing entrapment where a defendant's principal contention concerned

the timing of his arrest after entering a sting transaction." United States v. Bala, 236 F. 3d 87, 93

(2d Cir. 2000).  See also United States v. Rosa, 17 F. 3d 1531, 1551 (2d Cir. 1994).

As trial counsel made a sound decision not to pursue a legally deficient defense and

meritless claim, that decision can not and should not be second guessed.  It clearly was not a

decision made by an ineffective counsel, and trial counsel should not be faulted for failing to

pursue a defense not clearly recognized in this Circuit.  Thus, as to this basis of his motion, the

defendant has failed to satisfy the first prong of <u>Strickland</u>, that his counsel's representation has

fallen below an objective standard of reasonableness measured by prevailing professional norms.

Trial counsel committed no error in not raising this issue at sentence.  Moreover, although this

Court need not consider the second prong of the <u>Strickland</u> test, given that the defendant has

failed to show anything that would suggest his sentencing was fundamentally unfair, this basis of

habeas relief must fail.

**D.     As There Was No Evidence of a Gambling Disorder Provided to Trial Counsel,
         There Was No Basis to Seek a Downward Departure for Diminished Capacity.**

The defendant further claims that his trial counsel was ineffective for failing to seek a

downward departure for a claimed long-standing gambling problem.  Defendant's petition is

devoid of any facts provided by individuals with personal knowledge that would establish that

the defendant had a compulsive gambling disorder so severe that a downward departure for

diminished capacity would even be considered.  At best, defendant's petition notes that in one

paragraph of his presentence report, paragraph 54, defendant's former wife, Deborah Davis, from

whom he had been divorced for approximately eight years, told the probation officer preparing

the report that eight years previously the defendant had had a gambling problem for which he had

sought counseling. Mrs. Davis, the ex-wife, did express an opinion that gambling "could have

been a contributing factor" in the offense of conviction, but did not support that opinion with any

facts.  Nowhere else in the presentence report is there any information provided by the defendant

himself, by Lovenia Turner, his girlfriend of thirteen years with whom he has one child, Wendy

Harrison, another woman with whom he has a child, or his sister, Almena Thompson, that the

defendant had a gambling problem.  Trial counsel spoke with and interviewed Ms. Thompson,

16

Ms. Davis and Ms. Turner.  None of these individuals, nor the defendant himself, described
factual circumstances from which trial counsel "could infer that Mr. Davis became involved in
these sales of cocaine and cocaine base because of an addiction to gambling or anything like it."
Aff. 6/6/05, p. 5, ¶ 18.  Trial counsel also has indicated that he was aware at the time of
sentencing "of downward departure motions based upon compulsive behavior generally and
specifically compulsions relating to gambling."  Id.

Applying the Strickland standards to trial counsel's actions regarding this issue,
defendant's motion must again fail.  Under the first Strickland prong, i.e., that a defendant must
identify the acts or omission of counsel that are the result of unreasonable professional
judgement, the defendant can not carry his burden of proof.  Neither he, nor persons close to him,
provided any information to trial counsel to justify asserting such a defense or request.  Without
evidence, trial counsel can not be faulted for failing to raise and argue a meritless claim.  In fact
such an effort could have conceivably adversely impacted the other grounds for departure urged
by counsel during the sentencing hearing.

There is no evidence in the record that the defendant has a gambling problem so severe as
to be considered a disorder.  Even assuming for sake of argument that the defendant suffered
from a compulsive gambling disorder during the months he was distributing controlled
substances, he would not have been entitled to a downward departure.  Courts in this Circuit have
held that for a defendant to obtain downward departure relief for compulsive gambling, there
must be a direct causal link between a defendant's mental condition and the offense conduct to
warrant the departure.  See, e.g.,  United States v. Carucci, 33 F. Supp. 2d 302, 303 (S.D.N.Y.
1999)("a compulsive gambler is not, a fortiori, a compulsive illegal trader.").

17

In <u>United States v. Grillo</u>, 2003 WL 22999219, *2 (S.D.N.Y. Dec. 22, 2003), the trial

court denied a defendant convicted of mail theft and access device fraud a downward departure

for diminished capacity due to his gambling.  The Court noted:

> This Court is skeptical of whether the guideline
> should be construed in a manner to permit a
> downward departure in cases where reduced mental
> capacity merely results in conduct that creates the
> motive for the criminal behavior as distinguished
> from conduct constituting the criminal behavior.
> The implications of doing so would be vast.
> Defendants charged with a wide array of crimes
> might seek downward departures because they were,
> for example, compulsive shoppers who turned to
> stealing, running a house of prostitution, or insider
> trading, among other crimes, only after spending all
> of their assets.  If the Sentencing Commission really
> means to make downward departures available in
> cases like this one and those posited, it should say
> so.

<u>Id</u>.

Similarly, in <u>United States v. Kim</u>, 313 F. Supp. 2d 295 (S.D.N.Y. 2004), the district

court rejected a downward departure request of diminished mental capacity for a bank fraud

defendant who forged her employer's checks to steal money to look successful to her family.

The Court noted that the alleged compulsion would only relate to her motive for her crime, not to

the crime itself.  313 F. Supp. 2d at 298.  In the <u>Kim</u> case, defendant Kim's compulsion caused

her to spend money.  Kim's remedy to address her need for funds was to commit bank fraud,

which the Court found was one step removed from the compulsive behavior.  <u>Id</u>. at 299.  While

the Court recognized that Kim likely committed the crime to continue to finance her compulsive

behavior, the Court did not grant a downward departure, and stated

> the fact that she had a strong reason to commit bank fraud
> places Kim, at best, in no different position from that of

18

> ordinary defendants "who commit crimes in an attempt to extricate themselves from difficult financial circumstances in which they find themselves through no fault of their own." *United States v. Jones*, No. 01 Cr. 457, 2002 WL 449014, at *2 (N.D. Ill. Mar. 22, 2002)(denying diminished capacity downward departure where defendant, a pathological gambler, stole from her employer to pay gambling debts.)  The sentencing guidelines explicitly discourage "personal financial difficulties" as a consideration for downward departure, *see* U.S.S.G. § 5K2.12, and the Court is reluctant to interpret the diminished capacity guideline so broadly as to clash directly with this neighboring guideline provision.

Id.

Like the defendant in Kim, defendant Davis suggests that because of his alleged and unproven disorder he had amassed financial losses through gambling.  His remedy to this spending problem was to sell drugs on repeated occasions.  Like Kim, defendant's remedy was one step removed from his disorder and like Kim should not be grounds for downward departure.

When all is considered, the lack of evidence of a compulsive gambling disorder coupled with defendant's remedy for his alleged financial woes, drug dealing, and the disconnect between the two, trial counsel's not raising this at sentencing as a basis for departure can not be said to be conduct falling outside "the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, such that his decision could be considered deficient.  The defendant has failed to make the required showing under Strickland of deficient performance by trial counsel, and given the unlikely nature of the downward departure basis, he has failed to show sufficient prejudice.

**E.    No Hearing is Necessary for the Court to Resolve the Defendant's Claims.**

Finally, the Government does not believe that a hearing is necessary to adjudicate the defendant's claim.  Section 2255 provides that a court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to

no relief." 28 U.S.C. § 2255 (2000). The filing of a section 2255 petition, however, "does not entitle a petitioner automatically to a hearing." Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977). The Second Circuit has long held that a hearing is not required "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970). See also Machibroda v. United States, 368 U.S. 487, 495 (1962)("[T]he statue [section 2255] itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."). The Court also may expand the record to consider an affidavit from a defendant's counsel and, after considering the expanded record, deny the section 2255 petition absent a hearing. A district court properly may rule on a section 2255 motion without a testimonial hearing where (1) the allegations of the motion, accepted as true, would not entitle the defendant to relief or (2) the documentary record, including any supplementary submissions, such as affidavits, render a testimonial hearing unnecessary. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the Government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."). Section 2255 itself provides that a "court may entertain and determine [a section 2255] motion without requiring the production of the prisoner at the hearing." See also Rosa v. United States, 170 F. Supp. 2d 388, 398-99 (S.D.N.Y. 2001).

## III. CONCLUSION

The Government respectfully requests that the Court summarily dismiss the defendant's

petition.

To obtain collateral relief under 28 U.S.C. § 2255, the petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors which, were they left intact, would "inherently result in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995). See also Strickland v. Washington, 466 U.S. 668, 693-94 (1983) (recognizing the "profound importance of finality in criminal proceedings.").

In this case, the defendant waived his right to collaterally attack the sentence. Even, if the Court were to reach the merits of the petition, the defendant's claim that his defense counsel rendered ineffective assistance must fail because the claims to satisfy the Strickland test. The defendant has not established either that defense counsel's representation was deficient or that he suffered any prejudice. The petition should be dismissed.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


MICHAEL E. RUNOWICZ
ASSISTANT UNITED STATES ATTORNEY
157 Church Street
New Haven, Connecticut  06510
Telephone (203) 821-3700
Federal Bar No. CT08084

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was forwarded via U.S. Mail, First Class, postage prepaid, on this 20th day of June, 2005 to:


Todd Bussert, Esq.
103 Whitney Avenue
Suite 4
New Haven, CT 06510-1229

Andrew B. Bowman, Esq.
1804 Post Road East
Westport, CT 06880

_____
MICHAEL E. RUNOWICZ
ASSISTANT UNITED STATES ATTORNEY