UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANVIL DAVIS | : | |
|     Petitioner | : | CRIMINAL NO. |
| v. | : | 3:02-cr-275(JCH) |
| | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | December 20, 2005 |
|     Respondent. | : | |

**RULING ON MOTION TO VACATE SENTENCE [DKT. NO. 35]**

The petitioner, Danvil Davis, moves this court to vacate his sentence under section 2255 of Title 28 of the United States Code. Davis argues that his trial counsel was ineffective in representing him during sentencing for his failure to request several downward departures under the United States Sentencing Guidelines. For the reasons set forth below, Davis's motion to vacate is DENIED.

I.    **FACTUAL BACKGROUND**

On October 2, 2002, a federal grand jury returned an indictment charging Davis with possessing with intent to distribute 50 grams or more of cocaine base in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(A)(iii). On September 19, 2003, Davis pled guilty to this charge, and, on December 8, 2003, this court sentenced Davis to 108 months imprisonment to be followed by three years of supervised release.

Davis, prior to sentencing, through his trial counsel, requested downward departures according to the Sentencing Guidelines for extraordinary family circumstances, aberrant behavior, and for the time that Davis spent in detention in the

state prison system for charges arising from the same conduct.  Defendant's Sentencing Memorandum, pp. 2, 8 10 [Dkt. No. 22].  At sentencing, Davis received offense level reductions under the Sentencing Guidelines for a "safety valve" reduction and for acceptance of responsibility, and received credit for the time served in state detention, but did not receive downward departures as per his other requests. Sentencing Tr., pp. 4-5, 52-58 [Dkt. No. 34].

Davis, through new counsel, filed the instant motion on January 1, 2005, arguing that his counsel was ineffective at sentencing because he did failed to investigate and pursue downward departures on the basis of sentencing entrapment and Davis's alleged compulsive gambling behavior.

## II. DISCUSSION

Davis moves to vacate, set aside, or correct his sentence pursuant to section 2255 which provides that,

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  In general, such a remedy is available "only for constitutional error, a lack of jurisdiction in the sentencing court, or error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368

U.S. 424, 428 (1962)).  This narrow scope of review is intended to "preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996).  In most circumstances, prisoners seeking habeas relief must prove not only that constitutional violations occurred at trial, but also that such errors caused substantial prejudice or a fundamental miscarriage of justice.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Section 2255 also provides that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255.  If, the facts as alleged by Davis, even if credited, would not entitled him to habeas relief, the motion should be denied, and no hearing would be required.  Ciak v. United States, 59 F.3d 296, 307 (2d Cir. 1995).

Because Davis's basis for his claim is ineffective assistance of counsel, he must satisfy the two-part test set out by the Supreme Court in Strickland v. Washington in order to obtain relief.  466 U.S. 668 (1984).  Under Strickland the petitioner must first show that his counsel's representation "fell below an objective standard of reasonableness."  Id. at 688.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### A.  Waiver of Rights Under the Plea Agreement

The government argues that Davis's motion is barred in its entirety by the waiver of appeal rights contained in his plea agreement.  The plea agreement, signed by Davis and the government, contained the following waiver:

> The defendant acknowledged that under certain circumstances he is entitled to appeal his conviction and sentence.  18 U.S.C. § 3742.  It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 135 months, even if the Court reaches a sentencing range permitting such a sentence by Guideline analysis different from that specified above.  The defendant expressly acknowledges that he is waiving his appellate rights knowingly and intelligently.

Plea Agreement Letter pp.4-5 [Dkt. No. 15].  At his plea allocution, on October 29, 2002, Davis acknowledged that he had discussed the letter with his trial counsel and that he understood it.  Plea Allocution Tr., pp.15-17 [Dkt. No. 33].  He also specifically acknowledged that he knew that he was giving up his right to appeal and that he understood the consequences of giving up this right. Id. at 12.  Regarding the waiver of the right to collateral attack in particular, the following exchange between this court, the government counsel, Davis's counsel and Davis took place:

> Mr. Runowicz: . . . to the extent that if the Court were to sentence the defendant within the range that both counsel and I have believed to be the correct sentencing range; that is if the Court not exceed 135 months, --
> The Court: Yes.
> Mr. Runowicz: –that Mr. Davis agrees not to appeal the sentence or seek collateral attack.
> Mr. Bowman: That's correct, Your Honor.
> Court: Oh, all right, that should be on the record.  Thank you.  I had missed that.

4

> Mr. Bowman: Right, and Mr. Davis is well aware of that.
> Court: All right.
> So, Mr. Davis, is there anything that Attorney Bowman or Attorney Runowicz has just said that– in describing the agreement, that's different from what you had understood?
> Defendant: No, Your Honor.
> Court: No? All right.  Great.

Id. at p.24.

"It is by now well-established that a defendant's knowing and voluntary waiver of the right to appeal is generally enforceable."  United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "[A] waiver of the right to appeal should only be enforced . . . if the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." United States v. Ready, 82 F.3d 551, 557 (quotation marks omitted).

In Ready, the Second Circuit found that the petitioner was not bound by an appeal waiver where the district court stated that the waiver would not apply to an "illegal" sentence, thus misstating the scope of the waiver.  Id.  Similarly, in United States v. Chen, 127 F.3d 286 (2d Cir. 1997), a waiver was not enforced where the magistrate judge stated that the defendant retained a right to appeal an "illegal" sentence and did not adequately canvas the defendant about his understanding of the plea agreement.  Id. at 289-90.  In United States v. Tang, 214 F.3d 365 (2d Cir. 2000), an appeal waiver was not enforced where it was not explicitly called to the defendant's attention at the plea allocution.  Id. at 368.

Davis argues that the colloquy regarding the collateral attack waiver was

inadequate as it was his counsel who represented that Davis was aware of the waiver, and thus the waiver is not binding on him. Davis has also submitted an affidavit, dated December 2, 2005, in which he attests that he does not remember discussing any "appeal issues" with his trial counsel. Pet's Reply, Davis Aff., ¶ 23(f) [Dkt. No. 49].

However, Davis acknowledged in this exchange quoted above, as well as in his plea agreement and in the colloquy regarding his right to direct appeal, that he understood that he was waiving his rights and that he was doing so voluntarily. Unlike the district courts in Ready and Chen, this court did not misrepresent to Davis his ability to attack the legality of his sentence, nor did it leave the issue of appeal and collateral attack waiver wholly unaddressed, as the district court did in Tang. Ready, 82 F.3d at 557; Chen, 127 F.3d at 289; Tang, 214 F.3d at 368. Davis's statement that he does not now recall discussing appeal issues with his counsel does not contradict his sworn statement in court, made three years earlier, that, at the time, he understood the terms of his plea agreement and that he understood the nature of the appeal rights that he was giving up.[1] The only possible inference that can be drawn from the record is that Davis made a knowing and voluntary waiver, and thus it bars his claims regarding his sentence.[2]

---

[1] In addition to the colloquy regarding Davis's waiver of appeal rights, the court also engaged in a colloquy with Davis regarding the meaning of the right to appeal that he was giving up in relation to his conviction. Plea Allocution Tr., pp.11-12.

[2] Davis also argues that his waiver must be invalid because his trial counsel's negotiation concerning the waiver presented an "intrinsic conflict of interest" for counsel as it placed him "in the untenable position of having to render advice concerning the quality of his own representation of the defendant, or waiver of future claims related thereto." Thus, argues

### B. Ineffective Assistance of Counsel

Even if Davis were able to overcome the appeal waiver, his ineffective assistance of counsel claims do not satisfy the Strickland standard. Davis argues that his trial counsel was ineffective because he did not pursue the issue of sentencing entrapment (or "sentencing manipulation") on Davis's behalf. At the sentencing, Davis's trial counsel explained to the court that he did not pursue this theory as a defense at trial because he did not think that it was sufficiently viable in light of the risk that pursuing it could jeopardize his client's hope of receiving the benefit of acceptance of responsibility. Sentencing Tr., p. 48. Davis's trial counsel also asserted in an affidavit that he did not pursue a sentencing entrapment theory because he believed that the theory was not sufficiently compelling to justify the risk that playing the recordings necessary to support such a defense could be detrimental overall for his client. Bowman Affidavit, p.7 [Dkt. No. 43-2]. Davis's trial counsel's tactical decisions, whether or not they were ultimately prudent, were clearly the product of a reasoned and strategical approach to his representation. The court notes that Davis's trial counsel is a very experienced criminal defense attorney. "[S]trategic choices made after thorough

---

Davis, he was "functionally without counsel" with regards to the appeal waiver. Movant's Memorandum in Aid, p.3 [Dkt. No. 36]. However, a conflict of interests, for Sixth Amendment purposes, is a conflict that actually adversely affected counsel's performance. Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002). Even if it is assumed that there is a conflict presented here– a dubious assumption, given that the only claims that Davis waived are those that can be pressed against the government and not against his trial counsel personally– Davis has not shown that the potential conflict actually adversely affected his counsel's performance. That Davis waived his rights is not itself evidence that his counsel's performance was adversely afffected because, in exchange for the waiver, Davis received the benefit of the lower sentence represented by the plea agreement.

investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995)(quoting Strickland, 466 U.S. at 690); see also United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994)(tactical decisions do not fall beneath Strickland competency threshold where the decisions are a matter of reasonable strategy choicemaking).  Because trial counsel's decision not to pursue an entrapment theory was a reasonable strategy choice, Davis cannot satisfy the first prong of Strickland on this claim.[3]

Davis also claims that his trial counsel was ineffective because he did not pursue a downward sentencing departure due to his compulsive gambling habit.  This claim is without merit under Strickland as Davis cannot show, under the second prong of Strickland, that the "result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Under the Sentencing Guidelines, a court has the discretion to grant a downward departure for diminished capacity "if the defendant committed the offense while suffering from a significantly reduced mental capacity."  U.S.S.G. § 5K2.13 (2001). While, as Davis points out, courts in other circuits have held that compulsive gambling can warrant a downward departure under § 5K2.13, see e.g., United States v. Sadolsky, 234 F.3d 938, 943 (6th Cir. 2000), courts in this circuit have generally held

---

[3] The court also notes that the doctrine of "sentencing manipulation" has never been recognized in the Second Circuit. Catino v. United States, 00-CIV-7226(DAB), 2001 WL 536928 at*6 (S.D.N.Y. May 21, 2001) (citing United States v. Gomez, 103 F.3d 249 (2d Cir.1997)). Thus, it was not unreasonable for Davis's trial counsel not to pursue a theory that, as a matter of law, was not necessarily available to his client.

that compulsive gambling or other behavior does not warrant a downward departure where the behavior merely provides a motive for the illegal conduct.  Compare United States v. Grillo, 03-CRIM-0249(LAK), 2003 WL 22999219, at *2 (S.D.N.Y. Dec. 22, 2003)(declining to grant downward departure where "reduced mental capacity merely results in conduct that creates the motive for the criminal behavior as distinguished form conduct constituting the criminal behavior") with United States v. Liu, 267 F.Supp.2d 371, 374 (E.D.N.Y. 2003)(granting downward departure where defendant showed that his "pathological gambling addition impaired his ability to control behavior that he knew was wrong").   In United States v. Carucci, the district court declined to grant a downward departure to a defendant convicted of securities fraud on the basis of compulsive gambling, noting that "a compulsive gambler is not, a fortiori, a compulsive illegal trader.  While defendant's large gambling losses may have sufficiently exceeded his otherwise substantial income as to create an incentive to engage in lucrative unlawful trading, economic pressure hardly equates with diminished mental capacity."  33 F.Supp.2d 302, 303 (S.D.N.Y. 1999).[4]  Similarly, in United States v. Kim, the court declined to grant a downward departure to a defendant convicted of bank fraud on the basis of her compulsive gambling.  The court held that:

> the fact that [the defendant] had a strong reason to commit bank fraud places Kim, at best, in no different position from that of ordinary defendants who commit crimes in an attempt to extricate themselves from difficult financial circumstances in which they find themselves through no

---

[4]This court has ruled similarly at sentencing in another case on its docket.  See United States v.  Mildred Miller, November 5, 2003 Sentencing, 3:03-CR-57(JCH).

> fault of their own. The sentencing guidelines explicitly discourage "personal financial difficulties" as a consideration for downward departure, see U.S.S.G § 5K2.12, and the Court is reluctant to interpret the diminished capacity guideline so broadly as to clash directly with this neighboring guideline provision.

313 F.Supp.2d 295, 299 (S.D.N.Y. 2004)(internal quotation marks omitted).

Here, as in Kim and Carucci, Davis claims that his illegal conduct (i.e., the sale of drugs) was motivated by his large gambling losses. Motion to Vacate, ¶¶ 12-18. In his reply, Davis has submitted an assessment from a psychologist explaining that pathological gamblers, such as Davis, often resort to illegal behavior to remedy their gambling losses and debts. Pet's Reply, Ex. D. As in these cases, Davis's compulsive behavior only provided a motive for his illegal conduct and did not constitute the conduct itself. This court is not therefore persuaded that, if trial counsel had requested a downward departure on this basis, such a departure would have been warranted under § 5K2.13. Furthermore, even if § 5K2.13 permits a downward departure for compulsive gambling, this court would not have, in its discretion, granted a departure as it does not believe that the defendant's situation is "outside the heartland occupied by those who commit like crimes." See United States v. Grillo, 2003 WL 22999219, at *2. Accordingly, Davis cannot show that, but for his trial counsel's ineffectiveness, the results of the sentencing would have been different. Davis's Motion to Vacate is therefore DENIED.[5]

---

[5] The affidavit of Almena Thompson that Davis submitted with his reply brief also suggests that the decision not to pursue a downward reduction for compulsive behavior for Davis's gambling activity was a strategic decision on the part of Davis's trial counsel. Pet's Reply, Ex. B, ¶ 16.

### III.  CONCLUSION

For the foregoing reasons, the petitioner's Motion to Vacate [Dkt. No. 35] is hereby DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of December, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge