UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA　　　　:

　　　　　　　　PLAINTIFF　　　　:

VS.　　　　　　　　　　　　　　　:　　　DOCKET NO: 3:02CR00275(JCH)

DANVIL DAVIS　　　　　　　　　　:

　　　　　　　　DEFENDANT　　　:　　　MARCH 13, 2008

## DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE

　　　　The defendant Danvil Davis moves for a reduction of his previously imposed sentence of 108 months imprisonment and 3 years supervised release on December 8, 2003 upon his guilty plea to Count One of the Indictment charging a violation of Title 21 U.S.C. §841(a)(1); possession with intent to distribute and distribution of 50 grams or more of cocaine base.  The offense concluded on October 15, 2002.

　　　　This motion is made pursuant to 18 U.S.C. §3582(c)(2) and USSG §1B1.10.

　　　　In support of this motion for reduction of sentence the defendant represents the following:

1.    In the plea agreement submitted to the Court, there was a Guideline Calculation and agreement between the defendant and the government.  There was an agreement that the total offense level was 31 with a Criminal History Category 1 which the parties calculated to be in a range of 108-135 months imprisonment.  The plea agreement further stipulated "Both the Government and the defendant understand and agree that at time of sentence, the Government will recommend to the Court that the low end of the Guideline range (108 months) would be the appropriate sentence to be imposed in this case.    In making this recommendation, the Government believes that under 18 U.S.C. §§3585(b)(2)(1-2), that the defendant will be given credit toward the service of the term of imprisonment under this plea agreement for the time he has spent in official detention on state drug possession charges arising out of his arrest on October 15, 2002 as a result of this case.  The parties further acknowledge that the defendant retains the right to raise departure issues at the time of sentence and seek a sentence below that figure".  Therefore, all parties believed that, given the circumstances of the offense and all of the personal characteristics of the defendant, a sentence at the bottom of the Guideline range was appropriate.

2.  Attached herewith as Exhibit A is the Sentencing Memorandum submitted at the time of sentencing.

3.  Attached herewith as Exhibit B is a letter from his work supervisor at Fort Dix dated February 20, 2008 which states the following: "Inmate Danvil Davis has been employed at UNICOR Deman 2 as a Tractor Trailer driver from May 2004 to present. He has proven to be dependable, hard-working and accountable.  His interaction with others both Staff and Inmates at Fort Dix Prison Camp has been exceptional."  It is signed B. Grant.

4.  Exhibit C are certificates which reflect the positive participation Mr. Davis has engaged in while incarcerated at the FPC Fort Dix; a Certificate of Achievement for completion of a 40 Hour Drug Education Program, a Certificate of Completion of a Life Truck Operator Course and a physical education course Certificate of Completion.

5.  Exhibit D is a Progress Report dated February 24, 2007.

6.  In light of Amendment 706, his previous offense level of 31 with an imprisonment range of 108-135 months should be revised to an imprisonment range of 87-108 months.  In light of the previous Stipulation between the government and the defendant that he should be sentenced at the bottom of the Guidelines range and in

3

light of Mr. Davis's very positive institutional adjustment and participation, we ask the

Court to sentence him at or below a sentence of 87 months.

7. Oral argument is requested so that any outstanding issues can be responded

to.

THE DEFENDANT,
DANVIL DAVIS

BY _____

ANDREW B. BOWMAN, ct00122
1804 Post Road East
Westport, CT 06880
(203) 259-0599
(203) 255-2570 (Fax)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid on

this 13th day of March 2008.

Mike Runowicz, Esq.
Assistant U.S. Attorney
157 Church Street
New Haven, CT 06510


ANDREW B. BOWMAN

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,      :

         Plaintiff,          :

VS.                      : DOCKET NO: 3:02CR00275(JCH)

DANVIL DAVIS,              :

        Defendant.      : DECEMBER 3, 2003

### DEFENDANT'S SENTENCING MEMORANDUM

The defendant Danvil Davis submits this sentencing memorandum for the Court's consideration. This sentencing memorandum will specifically address the issues relating to a motion for downward departure based upon the extraordinary impact Mr. Davis's imprisonment has had and will have upon his family and the aberrant nature of his conduct. With respect to the presentence report, the total offense level is 31 with a Guideline Range of 108-135 months. The government has specifically recommended in the plea agreement that the Court impose a 108 month sentence which is the bottom of the Guideline Range. The government's

recommendation is set forth in the plea agreement but is not set forth in the presentence report.

I.    **Extraordinary Impact on the Davis Family Resulting From Mr. Davis's Imprisonment Provides the Court <u>with a Substantial Basis for a Downward Departure.</u>**

Extraordinary family circumstances may warrant a downward departure in this circuit; <u>United States vs. Alba</u>, 933 F.2d 117 (2nd Cir. 1991).  In <u>Alba</u>, the Court of Appeals upheld the district court decision to depart downward where defendant's disabled father depended upon him to get him in and out of his wheelchair. <u>Id</u>., 933 F.2d at 122.  The Second Circuit has interpreted USSG §5H1.6 to mean that when a sentencing court determines the circumstances related to family ties and relationship are extraordinary, the Guidelines do not bar it from considering them as a basis for a downward departure; <u>United States vs. Galante</u>, 111 F.3rd 1029, 1033 (2nd Cir.) <u>rehearing en banc denied</u>, 120 F.3rd 788 (2nd Cir. 1997).  In deferring to the District Court, the Court of Appeals has recognized that determining what is an exceptional hardship on the family resulting from the imprisonment of one of its members is "a subjective question because the overall conclusion is one resting in the eye of the beholder"; <u>United States vs. Galante</u>, 111 F.3rd at 1034.

> [D]istrict courts…have an institutional advantage over
> Appellate Courts in comparing one sentencing case to

another...Hence the sentencing court serves as a 'eye of the comparer' because it is in the best position to make comparisons and decide what combination of circumstances take a case out of the ordinary and make it exceptional.

Enclosed are letters from the defendant's daughter, Ahjza, age 13, who is the daughter of Danvil Davis and Deborah M. Davis, who were married on November 12, 1988 and divorced in 1996; (Exh. A); a letter from Deborah Davis, the former wife of Danvil and mother of Ahjza (Exh. B); a letter from Louvenia Turner, the partner of Danvil Davis and mother of Destiny Davis, Danvil's daughter with Louvenia (Exh. C); and a letter from Wendy Harrison, the mother of Ivory Harrison who is Danvil's daughter (Exh. D).

Ahjza Davis writes about her emotional reaction to her father's imprisonment (Exh. A). She states that it is "horrifing" [sic] not to be able to as much as touch your father". She lives in fear that her mother will die and she will be left with noone. She dreads the feeling of never being able to see her father. She writes that she will be 18 years old if her father serves five years more in prison which she describes as a big part of her life that is missing. While children love their parents, some need them more than others, and Ahjza Davis needs her father. Deborah Davis (Exh. B), Danvil's former wife and Ahjza's mother writes that although she is divorced from Danvil, theirs

3

was an amicable divorce.  She writes that "our main goal is the care and welfare of our daughter", that her daughter is extremely close to her dad and is quite dependent upon him. Since Danvil's imprisonment, Ahjza has been "in crisis".  Ahjza fears being left alone and the stability she always knew has truly been changed".

Deborah was diagnosed with Type II Diabetes which is unstable due to the stress in her life of being a single parent.  Her rent was capped at $721.00 per month which was based upon her working additional hours per week.  However, because of her high blood sugar, she has been fluctuating and working a minimal amount of hours.  Danvil had been paying child support to Deborah directly in cash.  While he did miss some payments over the course of seven years, for the most part he was dependable.  In July 2003 her rent was increased again, and she is currently paying $960.00 per month.  She also pays her own living expenses and with her declining health, she is finding it more and more difficult to pay her expenses.  She writes that it is literally "killing me" and that she needs Danvil to be able to contribute his portion for Ahjza.

Deborah Davis writes that although her marriage had its ups and downs, "the one thing we never lost sight of was the wellbeing of this child and what was best for her.  Ahjza also suffers from severe migraine headaches and had an extremely close

4

relationship with her father. She is clearly suffering from the separation". Deborah Davis asks for leniency in light of her failing health and for the stability of her child.

Louvenia Turner (Exh. C) has a thirteen year relationship with Danvil Davis. Their daughter is Destiny Davis who lives with Louvenia at Blue Hills Avenue. Ms. Turner had two boys and one girl when she met Danvil who were 4, 6 and 8 respectively. She writes that "Danvil was and is the only father they knew and was the only stable male figure they knew." Ms. Turner writes that "Danvil taught Destiny just about everything she knows. He patiently went through the process of teaching her to read." "She is an excellent reader (at least for her age) and I know it was because Danvil took the time and patience to read to her every night."

Destiny has a sleep disorder, and she awakens in the middle of the night sometimes screaming. It was her father, Danvil, who had the patience to deal with her night after night, and Louvenia left it up to Danvil. After these episodes, Danvil would stay in Destiny's room until she fell asleep. Since Danvil's absence, Destiny refuses to sleep alone and whispers her father's name in her sleep. She is prone to nightmares more often now.

After Danvil's imprisonment in October 2002, Louvenia allowed Destiny to speak with her father on the phone and then allowed Destiny to visit him at the Walker

Correctional Institution. Destiny was confused at the first visit, because there are no contact visits and she could not hug and kiss her father but could only talk to him through the glass. Destiny decided that she would rather see him through the glass than not see him at all. After her visits she cries but still looks forward to the next visit. Ms. Turner correctly observes "a tough act for a little child." Danvil tried to teach her to ride a bike, which she has given up since her father's imprisonment.

During the course of Danvil's imprisonment, Ms. Turner writes that "financially it has never been harder on my kids and I." Danvil was responsible for many of the bills. She is a homemaker companion and works a limited number of hours and is on a tight budget. She cannot afford a babysitter and is unable to keep up with her bills.

Ms. Turner writes that she understands that Danvil has broken the law, has admitted to wrongdoing and that there are consequences to be paid. However, she asks the Court to be as lenient as possible so that he can come home as early as possible to take care of his responsibilities to the children.

Wendy Harrison writes that Danvil is the father of her daughter, Ivory (Exh. D). She writes that both she and her daughter depend upon him. Their daughter is athletic and plays all types of sports including basketball, baseball and football. Danvil paid for her sporting needs, and they all live on a very tight budget. Without him, she

might not be able to play the sports that she had played when he was working. Wendy Harrison writes that she and her daughter miss and need Danvil, that he is a very good man, a very good person with a big heart – a very good father and provider.

Exhibit E is a letter from the Oak Hill School where Deborah Davis is employed setting forth her 26 hours per week schedule and her base rate of pay at $16.00 per hour. There is also attached the report of Devika Kasaranemi, M.D. (Exh. F) dated August 21 setting forth the fact that Deborah Davis has Type II Diabetes which is not under control.

Also enclosed is a letter from Collins Medical Associates, Dr. Charles Kantor, (Exh. G) who writes that Danvil suffers from Hepatitis B for which he is taking medication.

These letters from three adults and one child clearly show that Danvil Davis has true value as a father and as a provider to three children and three women who have depended upon him. Danvil had an excellent work history. He was hard working, and it is tragic for everyone that he became involved in this offense. The evidence is clear that he never had an inventory of drugs to sell. On each occasion he went to a supplier to obtain the drugs sought by the informant and brought them immediately to the informant and took the money for the drugs and gave it immediately to the two

individuals who supplied the drugs. He has provided the names of those individuals to the government. Danvil Davis is nonviolent and has no substantial or significant prior criminal record. The impact of his imprisonment upon three adult women and three children is truly extraordinary. One needs only to read their letters to get the true degree of impact the defendant's imprisonment has had and will have in the future.

We recognize that the Court will impose a sentence of imprisonment. But there has to be some recognition of the extraordinary nature of the consequences to six people both economically and emotionally. There are certainly compelling circumstances that take this case out of the ordinary and make it exceptional. See United States vs. Galante, supra, 111 F.3rd at 1034.

## II. Request for Downward Departure – Aberrant Behavior

The Court clearly has discretion to depart downward from the guideline range at Level 31. The government has recommended a sentence at the bottom of the guideline range but the defendant has reserved the right to request a further downward departure. The defendant has served one year in prison and he has been released on electronic monitoring since October 14, 2003 and has at all times abided by the terms and conditions of his release.

8

America's prisons are filled with nonviolent drug offenders. It seems that these offenders, like Danvil Davis, who are not afforded the benefits of a 5K1.1 motion by the government, are the biggest losers in our criminal justice system. For whatever reason, the government has chosen not to pursue cooperation with Mr. Davis, and the defendant is powerless to compel them to use him as a cooperator. This Court is well aware of instances where offenders who have committed far worse crimes in the area of drug offenses are given tremendous consideration in the form of downward departure by virtue of their cooperation against others. Many of those individuals are far worse offenders than Danvil Davis and have records that show that they have literally lived a life of lawlessness.

In contrast, Danvil Davis has lived a law abiding life and has an excellent work record. In the summer of 2002, he engaged in conduct that has brought him before the Court for sentencing. It was in many respects aberrant, and because it was aberrant, the Court may exercise its discretion and depart downward pursuant to §5K2.20 of the Sentencing Guidelines because it was completely inconsistent with the manner in which Mr. Davis had previously conducted his life. The basis for determining whether the Court would exercise its discretion to depart downward where a defendant's criminal conduct constituted aberrant behavior is set forth in §5K2.20.

The Second Circuit in <u>United States vs. Gonzalez</u>, 281 F.3rd 38, 47 (2nd Cir. 2002) has truly invested the District Court with broad discretion in downwardly departing for behavior that is aberrant.   Judge Minor, writing for the panel in Gonzalez, held as follows:

> The Sentencing Commission specifically rejected a rule that would have "allowed a departure for aberrant behavior only in a case involving a single act that was spontaneous and seemingly thoughtless.   USSG Supp. to App. C., amend. 603 commentary "reason for Amendment."  The Commission saw the need to define aberrant behavior "more flexibly" and to "slightly relax" the "single act" rule.

<u>Id</u>., 281 F.3rd at 47.  As the Second Circuit found, "spontaneity cannot be considered in connection with the requirement that aberrant behavior be of limited duration. Spontaneity of behavior and behavior of limited duration simply are not the same." <u>Id</u>. Danvil Davis's conduct was aberrant, because he had led a life that was fully within the boundaries of the law.

### III. Downward Departure – To Reflect the Defendant's Imprisonment for One Year by the State of Connecticut <u>on these Identical Charges.</u>

The Court has two choices in dealing with the defendant's imprisonment by the State of Connecticut for a period of nearly one year prior to his release to federal authorities and his subsequent release by the Court.  On October 15, 2002 the

defendant was arrested and held in lieu of bond at the Walker Correctional Institution by the State of Connecticut on the drug charges which are identical to the charges to which the defendant has pled guilty in this federal case.

The Court should either (1) make a finding and include in the judgment pursuant to 18 U.S.C. §3585(b)(2)(1-2) that the defendant must be given credit toward the service of his federal term of imprisonment for the time spent in official detention on State drug possession charges arising out of his arrest on October 15, 2002 as a result of this case as provided in Section 4 of the plea agreement at page 4.

Alternatively, the Court could as a separate ground for downward departure depart downward to reflect the credit for the time Mr. Davis has already served which is the equivalent of one year. The choices available to the Court should really be determined on the basis of what is the most reliable and certain way to proceed so that Mr. Davis is certain to receive credit for the year he spent in state custody. Both the government and the defendant believe that he is entitled to such credit and therefore we raise this issue, because it is most important for him to receive that credit, either pursuant to statute or by downward departure.

For all of these reasons, this case is truly exceptional and the Court possesses the discretion to depart below the guideline range from Level 31. The defendant

11

respectfully requests that the Court exercise its discretion and depart downward for all of the reasons set forth herein in the recognition that the defendant will have to serve a period of five years supervised release when he is released from his sentence of imprisonment. The public interest would certainly be served by a disposition which is characterized by leniency under all of the circumstances of this case.

THE DEFENDANT,
DANVIL DAVIS,

BY _____
ANDREW B. BOWMAN, ct00122
1804 Post Road East
Westport, CT 06880
(203) 259-0599
(203) 255-2570  (Fax)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed on this 3rd day of December, 2003 to:

Michael Runowicz, Esq.
Assistant U.S. Attorney
157 Church Street
New Haven, CT 06510

12

Mr. Jose Cartagena
United States Probation Officer
915 Lafayette Blvd.
Bridgeport, CT 06604

ANDREW B. BOWMAN

**EXHIBIT B**



**UNICOR WAREHOUSE**
**ATTN: Deman-2**
**P.O. Box 6000**
**Fort Dix, NJ 08640**
**TEL: (609) 723 1100 X1305**
**FAX: (609) 723 8759**

# UNICOR
U.S. Department of Justice
Federal Prison Industries, Inc.

---

**DATE:**    February 20, 2008

**TO:**    United States District Court
District of Connecticut

**Re:**    **Danvil Davis Reg. # 14904-014**

To Whom It May Concern:

    Inmate Danvil Davis has been employed at UNICOR Deman 2 as a Tractor Trailer driver from May 2004 to present. He has proven to be a dependable, hard working and accountable. His interaction with others both Staff and Inmates at Fort Dix Prison Camp has been exceptional.

Thank you
B. Grant

# EXHIBIT C

Ford of Old Bridge New Jersey

# This Is To Certify That

Danvil Davis

## Has Completed The
## "Coaching The Lift Truck Operator"
## Course

Date March 30, 2005

Instructor E.B.Levine

Expiration Date March 30, 2008



Federal Bureau of Prisons
F.C.I. Fort Dix, NJ

*Certificate of Achievement*

*This certifies that*

**Danvil Davis** 14903-014

has successfully completed the 40-Hour Drug Education Program here at
FCI Fort Dix, New Jersey on October 31, 2006.

D. Mullen, Drug Treatment Specialist

# Certificate of Completion

is hereby granted to: Danvil Davis
to certify that they have completed to
satisfaction



Beginner Abs 1
Granted: April 28, 2006



*R. Wade, Recreation Specialist*

# EXHIBIT D

BP-S187.058 **PROGRESS** REPORT CDFRM
JUN 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Institution Name, Address, & Telephone No.<br>Federal Correctional Institution, P.O. Box 38, Fort Dix, NJ 08640<br>(609) 723-1100 | Date<br>February 24, 2007 |
|---|---|

<strong>Inmate Reviewed</strong>

| Inmate's Signature | Date | Staff Signature |
|---|---|---|
| Danvil Dav P | 2/24/07 | |

1. Type of Progress Report

Initial    ☐ Statutory Interim    Pre-Release
Transfer    X Triennial    Other (Specify)

| 2. Inmate's Name<br>Davis, Danvil | 3. Register Number<br>14904-014 | 4. Age (DOB)<br>43 (03/23/63) |
|---|---|---|

5. Present Security/Custody Level
Min/Out

6. Offense/Violator Offense
Possession with Intent to Distribute and Distribution of 50 Grams or more of Cocaine Base

7. Sentence
3559 PLRA Sentence; 108 Months; 3 Years Supervised Release; $100 Felony Assessment

| 8. Sentence Began<br>01/22/04 | 9. Months Served +<br>Jail Credit<br>37 + 365 Days JCT | 10. Days GCT/or EGT/SGT<br><br>216 Days GCT |
|---|---|---|
| 11. Days FSGT/WSGT/DGCT<br>0/0/0 | 12. Projected Release<br>11/25/10 VIA GCT REL | 13. Last USPC Action<br>N/A |

14. Detainers/Pending Charges
There are no known detainers or pending charges.

15. Co-defendants
None.

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

PROGRESS REPORT - CONTINUED

Committed Name: Davis, Danvil    Reg. No.: 14904-014    Date: 02/24/2007

16.    Institutional Adjustment:

 a. **Program Plan**: Inmate Davis was initially classified at SCP Fort Dix, New Jersey, on 02/11/04. At that time and at subsequent program reviews, Unit Team recommended participation in the Financial Responsibility Program (FRP), Adult Continuing Education Classes, 40-Hour Drug Abuse Program, General Education Development (GED), College Courses, 500 hour Residential Drug Abuse Program, Computer Skills, Release Preparation Program (RPP), and maintaining clear conduct and good sanitation in the housing unit. Inmate Davis' overall institutional adjustment has been good.

 b. **Work Assignments:** While at SCP Fort Dix, New Jersey, he was assigned to the Department of Public Works and to UNICOR where he is currently assigned. He works approximately 40 hours per week and receives better than average work reports. His relationship with staff and co-workers was reported as good.

 c. **Educational/Vocational Participation**: Inmate Davis has completed the GED Program and Abdominal Class. He is currently participating in BCIT Computer Skills. He is not enrolled in any other programs.

 d. **Counseling:** Inmate Davis completed the 40-Hour Drug Abuse Program on 10/31/06. He also participates in informal counseling sessions with his case manager and correctional counselor on an as needed basis.

 e. **Incident Reports:** Inmate Davis has maintained clear institutional conduct.

 f. **Institutional Movement**: Inmate Davis arrived at SCP Fort Dix, New Jersey, on 01/22/04. There has been no other institutional movement.

 g. **Physical and Mental Health:** Inmate Davis is currently assigned regular duty with no There are no indications of mental disorders. He should be considered fully employable upon his release from federal custody.

 h. **Progress on Financial Responsibility Plan:** At the time of sentencing, the District of Connecticut, imposed a $100 Felony Assessment Fee. Inmate Davis completed the Inmate Financial Responsibility Program on 02/11/04. He is not subject to Cost of Incarceration Fee (COIF).

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## PROGRESS REPORT - CONTINUED

Committed Name: <u>Davis, Danvil</u>   Reg. No.: <u>14904-014</u>   Date: <u>02/24/2007</u>

17.   <u>Release Planning</u>:   The Unit Team will discuss Residential Re-Entry Center (RRC) placement 11-13 months prior to release.

    a.   **Residence**:                To be secured.

    b.   **Employment**:          To be secured.

    c.   **USPO:**          Ms. Maria Rodrigues McBride, CUSPO
       **(Sentencing District)**    District of Connecticut
                                    157 Church Street - 22nd Floor
                                    New Haven, Connecticut 06510

    d.   **Release Preparation Program:** Inmate Davis will complete the Institutional and Unit Release Preparation Programs prior to his release.  These particular programs will provide him with information on health and nutrition, employment, personal finance, community resources, release requirements and procedures, and personal growth and development.

Inmate Davis is subject to notification under 18 U.S.C. 4042(b) for a conviction of a drug-trafficking crime.  He is also subject to DNA collection.

18. <u>Dictated By</u>:      Karl Byrd, Case Manager

19. <u>Date Typed</u>:      02/24/07, kdb

20. <u>Reviewed By</u>:      A. J. Lewis, Unit Manager

Record Copy - Inmate File; copy - U.S. Probation Office; copy - Parole Commission Regional Office (If applicable); copy - inmate

(This form may be replicated via WP)                      Replaces BP-s187.058 DTD FEB 94